### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) Amber Selvey, individually;<br>(2) Tyler Selvey, individually;<br>(3) and on behalf of their minor child L.S;<br><br>        Plaintiffs,<br><br>v.<br><br>(1) Independent School District Number 16<br>    of Payne County, State of Oklahoma, a/k/a<br>    Stillwater Public School District,<br>    a/k/a Stillwater Independent<br>    School District Number 16;<br>(2) City of Stillwater;<br>(3) Jesse Butler, an individual;<br>(4) Jacque Butler, an individual;<br>(5) Mack Butler,<br>    in his individual and official capacity;<br>(6) Paul Blankinship,<br>    in his individual and official capacity;<br>(7) Walter Howell,<br>    in his individual and official capacity;<br><br>        Defendants. | Case No.<br>Honorable<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>**Jury Trial Demanded** |

### COMPLAINT

Plaintiffs Amber Selvey, Tyler Selvey, and L.S., for their claims for relief against Defendants Independent School District Number 16 of Payne County, State of Oklahoma, a/k/a Stillwater Public School District, a/k/a Stillwater Independent School District Number 16; City of Stillwater, Jesse Butler, Jacque Butler, Mack Butler, Paul Blankinship, and Walter Howell state as follows:

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Amber Selvey, is a resident of Payne County, Oklahoma, and was a resident there during the incidents which give rise to the claims for relief set forth herein.

1

2. Plaintiff Tyler Selvey, is a resident of Payne County, Oklahoma, and was a resident there during the incidents which give rise to the claims for relief set forth herein.

3. Plaintiff L.S. is the minor child of Plaintiffs Amber and Tyler Selvey, is a resident of Payne County, Oklahoma, and was a resident there during the incidents which give rise to the claims for relief set forth herein.

4. At all relevant times, L.S. was a student attending Stillwater High School in Defendant School District.

5. L.S. is a deaf/hard of hearing individual and has an individualized education plan ("IEP") to accommodate her disability.

6. Defendant Independent School District Number 16 of Payne County, State of Oklahoma, a/k/a Stillwater Public School District, a/k/a Stillwater Independent School District Number 16, a political subdivision, is a public school district established under the laws of Oklahoma, located in Stillwater, Oklahoma, and is an educational institution as provided under Title IX ("Defendant School District").

7. Defendant City of Stillwater ("Defendant City") is a municipality incorporated under the laws of Oklahoma.

8. Upon information and belief, the Stillwater Police Department is a municipal department under the control of the City of Stillwater.

9. Upon information and belief, Defendant Jesse Butler ("Butler") is a resident of Payne County, Oklahoma, and was a resident there during the incidents which give rise to the claims for relief set forth herein.

10. At all relevant times, Defendant Jesse Butler was a student attending Stillwater Public High School.

2

11. Upon information and belief, Defendant Jacque Butler, Jesse Butler's mother, is a resident of Payne County, Oklahoma, and was a resident there during the incidents which give rise to the claims for relief set forth herein.

12. Upon information and belief, Defendant Mack Butler, Jesse Butler's father, is a resident of Payne County, Oklahoma, and was a resident there during the incidents which give rise to the claims for relief set forth herein. At all relevant times, Mack Butler was employed by Defendant School District as the Assistant Athletic Director for Stillwater Public Schools.

13. Upon information and belief, Defendant Paul Blankinship ("SRO Blankinship") is a resident of Payne County, Oklahoma, and was a resident there at during the incidents which give rise to the claims for relief set forth herein. At all relevant times, SRO Blankinship was employed as a School Resource Officer for Stillwater High School by Defendant School District and Defendant City.

14. Upon information and belief, Defendant Walter Howell is a resident of Payne County, Oklahoma, and was a resident there during the incidents which give rise to the claims for relief set forth herein. At all relevant times, Walter Howell was employed by Defendant School District as the Principal of Stillwater High School.

15. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 for all claims arising under federal law and under 28 U.S.C. § 1367 for all state law claims arising from the same facts.

16. Venue is proper as Defendants reside in Payne County, Oklahoma, and within the Western District of Oklahoma, and the incidents giving rise to the claims for relief occurred in the Western District of Oklahoma.

17. As required by OKLA. STAT. tit. 51 § 151, the Oklahoma Governmental Tort Claims Act ("OGTCA"), Plaintiffs submitted a Tort Claim Notice on September 8, 2025, which was received by Defendant School District on September 10, 2025, and Defendant City on September 11, 2025. Ninety days passed with no action on the claim by Defendant as to acceptance or denial of the claim, which claim was deemed denied on December 10, 2025. The 180-day filing period expires on June 7, 2026, and this suit is commenced within that 180-day period.

18. Plaintiffs have complied with all prerequisite OGTCA requirements.

19. Plaintiff L.S. will attain the age of majority in January 2026, thus, all claims are timely filed within the relevant statute of limitations.

## FACTS COMMON TO ALL CAUSES OF ACTION

20. Upon information and belief, Jesse Butler has a demonstrable pattern of disturbing, violent, aggressive behavior. One example of this disturbing behavior is that he would repeatedly slam his head against the wall in the baseball clubhouse when angry or frustrated.

21. Upon information and belief, Mack and Jacque Butler were aware of Butler's disturbing behavior and did not seek help for their son or take any other corrective action.

22. From January 2024 through March 2024, for approximately six weeks, L.S. and Jesse Butler were in a dating relationship.

23. Beginning in February 2024, Butler committed multiple sexual assaults against L.S.

24. On one occasion, Butler sexually assaulted L.S. at the Butlers' residence.

25. Upon information and belief, Jacque Butler heard L.S. crying while Jesse Butler was assaulting L.S. at her home, and she knocked on the door of the room that they were in.

26. Jesse Butler told his mother, through a closed door, that everything was fine.

4

27. Upon information and belief, Jacque walked away and Jesse continued assaulting L.S.

28. On one occasion, in a Walmart parking lot, Jesse Butler forced himself onto L.S., put his hands around her throat, and strangled her.

29. A doctor later informed L.S. that she nearly died when Butler strangled her.

30. L.S. required surgery to repair the damage that Butler caused to her throat.

31. On or about September 11, 2024, L.S. became aware that another girl was a victim of Butler. While discussing Butler's abuse at church with the other victim, a youth worker overheard the girls and informed them that unless the girls reported Butler within twenty-four hours, the youth worker would be forced to report Butler.

32. On September 12, 2024, L.S. reported to Assistant Principal Tommie Grant that Butler had sexually assaulted, strangled, harassed, stalked and abused her.

33. Grant called SRO Blankinship to the office, who interviewed L.S.

34. SRO Blankinship stated L.S. would have to get her story straight with Butler's other victim, and that she would have to go to the Saville Center for Child Advocacy to make sure she was telling the truth.

35. Upon information and belief, Defendant School District did not perform an investigation into Butler's conduct after L.S.'s report.

36. Upon information and belief, Defendant School District took no action to protect L.S. from Butler.

37. Upon information and belief, Defendant School District did not notify staff and employees about L.S.'s report.

38. On September 13, 2024, Butler began a coordinated campaign of harassment against L.S.

39. Upon information and belief, Butler called L.S., and had other students call her on his behalf, to pressure L.S. not to talk to the police about him.

40. On September 20, 2024, L.S. was cheerleading at a Stillwater High School football game. Butler took pictures of her from the stands, and then he went down onto the track where L.S. was cheering so that he could harass and intimidate her. Butler was not authorized to be on the track. Despite Butler being visible and obviously where he was not supposed to be, no one from Defendant School District removed Butler from the track.

41. Upon information and belief, Mack and Jacque Butler were aware that Jesse was stalking, harassing, and intimidating L.S., but they took no action in response.

42. On September 26, 2024, Amber Selvey filed for an Emergency Protective Order ("EPO") against Butler on behalf of L.S.

43. The EPO was served on Butler while he was at school.

44. After Butler was served with the EPO, Walter Howell called Amber and informed her that Mack Butler was crying and taking it really hard when the EPO was served on Jesse at school.

45. During that phone call, Howell requested that Amber report any problems with Jesse directly to him instead of the Stillwater Police Department.

46. Upon information and belief, in response to Butler being served with the EPO on campus, Defendant School District instituted a new policy that EPOs are not authorized to be served on students while they were on the school campus.

47. Upon information and belief, the policy of School District is for all EPOs to be entered into an electronic database so that all teachers and staff would know about the EPO, could help protect the student, and could help enforce the EPO.

48. Upon information and belief, L.S.'s EPO against Butler was not entered into this database that fall. On multiple occasions that fall, Butler stalked and harassed L.S. at school and at school-sponsored activities.

49. On multiple occasions that fall, Mack Butler harassed L.S. on campus. Mack Butler would stand outside the cheer barn and glare at L.S. when she went there for games.

50. On December 9, 2025, L.S.'s Deaf/Hard of Hearing specialist called Amber because L.S. was uncharacteristically struggling with her school assignments. When Amber informed the specialist about Butler and the EPO, the specialist had no idea what Amber was talking about.

51. Amber complained to Assistant Principal Grant about the staff not being informed of L.S.'s situation. Grant responded by emailing L.S.'s teachers to give grace on missing work, because L.S. was having a "rough go of it."

52. On January 14, 2025, Walter Howell called Amber Selvey regarding Amber's complaints with how the school was handling L.S.'s situation.

53. Howell informed Amber that he chose not to enter the EPO into the school's database because he did not want to interfere with Butler's opportunity to receive an education at Defendant School District.

54. During that call, Howell told Amber that he was keeping L.S. safe by personally keeping Mack and Jesse Butler away from L.S. Howell also told Amber that when the EPO is dropped, the school would still keep Butler and L.S. out of the same classes.

55. Howell's actions demonstrate an utter disregard by Defendant School District for implementing and following proper procedures under Title IX. Defendant School District's only concern was to protect Butler without any regard for his victims.

56. On January 22, 2025, SRO Blankinship pulled L.S. out of class for a private meeting, which is against school policy.

57. At the meeting, SRO Blankinship informed L.S. that he was aware of Butler's habit of stalking L.S. in the school parking lot.

58. SRO Blankinship informed L.S. that as long as Butler did not speak to her, SRO Blankinship would not do anything about Butler's conduct.

59. Upon information and belief, SRO Blankinship deliberately pulled L.S. out of class, and then escorted her back to class, to embarrass her.

60. Upon information and belief, on January 28, 2025, Mack Butler, Walter Howell, and SRO Blankinship attended a school wrestling match as a part of their job duties.

61. L.S. was required to be at the wrestling match for cheer.

62. The three men sat together and glared at and intimidated L.S. during the match.

63. On January 29, 2025, School District held its first safety plan meeting for L.S. The meeting was a "locked-door meeting," with only the individuals on the safety team were supposed to be in attendance. The meeting was held in Walter Howell's office.

64. During the safety plan meeting, Walter Howell came into the room and stayed where he could overhear the discussion.

65. Howell then left the door open, which was adjacent to the front office, so that the meeting could be overheard by individuals in the front office.

66. Upon information and belief, SRO Blankinship, Howell, and other parents and staff could overhear the meeting.

67. The only actions taken at the safety meeting to protect L.S. were (1) to move Butler's parking spot across the parking lot and (2) to allow L.S. to leave third period early to attend cheer.

68. Upon information and belief, school teachers and staff were not informed of L.S.'s safety plan.

69. Upon information and belief, SRO Blankinship was required to attend L.S.'s safety meeting as a part of his duties as a school resource officer, but he did not attend the meeting.

70. On January 30, 2025, Tyler and Amber Selvey complained about SRO Blankinship's conduct to his supervisor, Lieutenant Cluck, at the Stillwater Police Department.

71. After listening to the Selvey's complaints, Lieutenant Cluck told the Selvey's that SRO Blankinship is friends with the Butlers, so they should not hold SRO Blankinship's conduct against him.

72. Upon information and belief, nothing was done regarding SRO Blankinship's conduct after this meeting.

73. Upon information and belief, the school held a safety meeting for Butler approximately one week after L.S.'s safety meeting.

74. Upon information and belief, the school held this meeting because it believed that Title IX required them treat Butler equally to L.S.

75. Upon information and belief, Butler's safe people were designated as Mack Butler, Walter Howell, and SRO Blankinship.

76. On February 5, 2025, Butler violated L.S.'s EPO.

77. Student athletes were on the basketball court for a school-sponsored event, Senior Signing Day. SRO Blankinship was in attendance, as were multiple members of the administration and staff were present.

78. At Senior Signing Day, in full view of staff and administrators, Butler came within five feet of L.S. to stare at, harass, and intimidate her.

79. Not one school employee intervened on L.S's behalf in response to Butler's violation of the EPO. It was only when one of L.S.'s cheer teammates informed a cheer coach about Butler's conduct that anyone intervened. The cheer coach removed L.S., not Butler, from the court.

80. The only action the school took to support L.S. after the EPO violation was informing her that, if L.S. wanted to attend an activity, and she informed the school ahead of time, Butler would not be allowed to attend that activity.

81. Upon information and belief, on February 10, 2025, the school had a second safety plan meeting with Jesse Butler and his family.

82. Upon information and belief, Mack Butler, Walter Howell, and SRO Blankinship advocated for Butler not to have any consequences from the school for violating the EPO.

83. After Jesse Butler's safety meeting, the school asked L.S. not to attend any baseball games or related events because it would interfere with his ability to participate in the baseball team.

84. L.S. was generally discouraged from participating in school activities so that she would not interfere with Mack and Jesse Butler's ability to attend activities.

85. On March 4, 2025, Butler was arrested and charged with nine felony counts, seven of which were for his sexual abuse, assault, battery, and harassment of L.S.

86. Butler pled no contest to the criminal charges and was sentenced as a youthful offender to community service.

87. After Bulter was sentenced, members of the Stillwater community went out to protest the light sentence he received.

88. Upon information and belief, Defendant School District instituted policies to prevent students from protesting Butler's sentencing.

89. Upon information and belief, Defendant School District scheduled mandatory activities for seniors on the day the protests were set to occur, and by instituting a policy that penalized students for attending protests during the school day.

90. On July 3, 2025, L.S. had surgery to repair damage to her neck caused by Butler strangling her.

91. On August 4, 2025, Defendant School District finally informed L.S. that Butler would not be allowed on campus for any reason.

92. During this fall semester of 2025, Walter Howell continues to attend football games where L.S. is cheering, and he repeatedly stares at and harasses L.S. and her family.

## DAMAGES

93. Plaintiff L.S. required surgery to repair her injuries from Butler strangling her.

94. Plaintiff L.S. is still receiving medical treatment as a result of her injuries from Butler.

95. Plaintiff L.S. has suffered and continues to suffer severe mental and emotional anguish.

96. Plaintiff L.S. experienced harassment from Jesse Butler, Mack Butler, Walter Howell, and SRO Blankinship.

97. Plaintiff L.S. continues to experience ongoing harassment from Walter Howell.

98. Plaintiff L.S. has received and continues to receive counseling for the mental and emotional anguish caused by Defendants' actions.

99. Plaintiff L.S.'s ability to receive an education was and continues to be impaired.

100. Plaintiff L.S.'s ability to participate in extracurricular and other school activities was impeded and continues to be impeded.

101. Plaintiff L.S. missed time from her job as a cheer and tumbling coach as a result of Defendants' actions.

102. Plaintiff L.S. is entitled to the following damages, as applicable under Federal and Oklahoma law:

   a. Physical pain and suffering, past and future;
   b. Mental pain and suffering, past and future;
   c. Loss of educational opportunities;
   d. Loss of ability to participate in extracurricular activities;
   e. Loss of earnings;
   f. Loss of enjoyment of life;
   g. Impairment of earning capacity;
   h. Loss of reputation;
   i. The reasonable expenses of the necessary medical care, treatment and services, past and future;
   j. Attorneys fees;
   k. Compensatory damages; and
   l. Interest accrued and accruing.

103. Plaintiff L.S. is entitled to punitive/exemplary damages as applicable under Federal and Oklahoma law.

104. Plaintiffs Tyler and Amber Selvey have incurred and will continue to incur medical expenses for L.S.'s treatment as a result of Defendants' actions.

105. Due to the damages detailed above, L.S. was unable to fully participate in the family or perform her usual chores.

106. Plaintiffs Tyler and Amber Selvey had to perform additional household work to compensate of the loss of L.S.'s services.

107. Plaintiffs Tyler and Amber Selvey are entitled to compensatory damages for the loss of L.S.'s services.

### FIRST CLAIM FOR RELIEF
Violation of Title IX
on behalf of Plaintiff L.S.
Against Defendant School District

108. Plaintiff L.S. incorporates all preceding paragraphs as if fully set forth below.

109. Title IX states, in part, that "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefit of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

110. Defendant School District is an educational institution that receives Federal financial assistance, and it therefore has an obligation to comply with the terms and provisions of Title IX.

111. Defendant School District has a recent history of failing to protect students from sexual predators. See Payne County Court Case No. CF-20-152, *State v. Morejon*.

112. Defendant School District created a hostile educational environment for L.S. by failing to protect her from Butler.

113. Defendant School District had actual knowledge of Butler's harassment and abuse. Instead of reporting Butler's conduct to teachers and implementing a safety policy, the school allowed Butler and employees of Defendant School District to harass, and intimidate L.S. on campus and at school events without intervening on her behalf.

114. Defendant School District's employees who had actual knowledge of the abuse and harassment had the authority to take corrective action to end the unlawful conduct and did not do

so. Instead, Defendant School District's employees who had the authority to help L.S. used their authority to shield Butler from consequences and retaliate against L.S.

115. Defendant School District created a hostile education environment and retaliated against L.S. by:

   a. Failing to investigate Butler's conduct;

   b. Failing to stop Butler from harassing and intimidating L.S. on multiple occasions;

   c. Failing to notify its employees regarding L.S.'s emergency protective order after it was entered against Butler;

   d. Failing to enter L.S.'s EPO into the school's electronic database so that teachers and administrators would receive notice;

   e. Delaying the implementation of a safety plan for four months after the service of the EPO;

   f. Refusing to enforce L.S.'s EPO after Butler stalked and harassed her on campus;

   g. Allowing Butler to violate L.S.'s EPO in full view of teachers and administrators;

   h. Allowing its employees to engage in a pattern of harassment and intimidation on school property;

   i. Interfering with L.S.'s safety plan meeting;

   j. Taking inadequate actions to protect L.S. even after the implementation of the safety plan;

    k. Discouraging L.S. from participating in and attending school activities so that Butler and his father could continue participating in them;

    l. Implementing a safety plan to protect Butler's access to his extracurricular activities;

    m. Banning L.S. from attending baseball games to protect Butler's access to his sport;

    n. Implementing policies to prevent students from being served with protective orders on campus;

    o. Implementing policies to prevent students from protesting Butler's sentencing.

116. The abuse, harassment and discrimination suffered by L.S. was so severe, pervasive, and objectively offensive that it deprived her of access to the educational benefits and opportunities provided by the school.

117. L.S. is entitled to compensatory, special, and punitive damages as detailed herein as a result of Defendant School District's Title IX violations.

118. L.S.'s damages are in excess of $75,000.00, exclusive of costs and interest.

119. L.S. is entitled to an award of punitive damages as a result of Defendant School District's Title IX violations.

**SECOND CLAIM FOR RELIEF**
Violation of Equal Protection under 42 U.S.C. § 1983
on behalf of Plaintiff L.S.
Against Defendant School District

120. Plaintiff L.S. incorporates all preceding paragraphs as if fully set forth below.

121. After L.S. reported Butler's sexual assault and harassment, Defendant School District acted with deliberate indifference to her rights.

122. Defendant School District allowed a hostile environment to exist after L.S.'s report.

123. Instead of protecting the victim and ensuring her safety, Defendant School District took actions and implemented policies to protect Butler at L.S.'s expense.

124. Defendant School District allowed its employees to engage in a pattern of harassment and intimidation against L.S.

125. L.S. is entitled to compensatory, special, and punitive damages as detailed herein as a result of Defendant School District's Equal Protection violations.

126. L.S.'s damages are in excess of $75,000.00, exclusive of costs and interest.

127. L.S. is entitled to an award of punitive damages as a result of Defendant School District's Equal Protection violations.

### THIRD CLAIM FOR RELIEF
Intentional Infliction of Emotional Distress
on behalf of Plaintiff L.S.
Against Defendants Jesse Butler, Mack Butler, Walter Howell, and Paul Blankinship

128. Plaintiff L.S. incorporates by reference all preceding paragraphs as if fully set forth below.

129. Defendants' actions in the setting in which they occurred were so extreme and outrageous as to go beyond all possible bounds of decency and would be considered atrocious and utterly intolerable in a civilized society.

130. Defendants intentionally or recklessly caused severe emotional distress to L.S. beyond that which a reasonable person could be expected to endure.

131. L.S. is entitled to compensatory, special, and punitive damages as detailed herein as a result of Defendants' intentional infliction of emotional distress.

132. L.S.'s damages are in excess of $75,000.00, exclusive of costs and interest.

### FOURTH CLAIM FOR RELIEF
Respondeat Superior
on behalf of Plaintiff L.S.
Against Defendants School District and City

133. Plaintiff L.S. incorporates by reference all preceding paragraphs as if fully set forth below.

134. Defendants Mack Butler, Walter Howell, and Paul Blankinship were acting within the scope of their employment when they intentionally inflicted emotional distress on L.S.

135. Defendants School District and City are directly liable for the actions of their employees while in the scope of their employment.

### FIFTH CLAIM FOR RELIEF
Negligent Hiring, Supervision, and Retention
and Gross Negligence
on behalf of Plaintiff L.S.
Against Defendants School District and City

136. Plaintiff L.S. incorporates by reference all preceding paragraphs as if fully set forth below.

137. Defendant School District and Defendant City had a duty to L.S. to hire, supervise, and train Mack Butler, Walter Howell, and SRO Blankinship

138. Defendants negligently breached their duties to L.S. by hiring, failing to supervise, and/or retaining Mack Butler, Walter Howell, and SRO Blankinship by allowing defendants to harass, embarrass, and intimidate L.S. in the course of performing their work.

139. Defendants' failure in hiring, supervising, and retaining Mack Butler, Walter Howell, and Paul Blankinship was the direct and proximate cause of injuries to L.S.

140. L.S. is entitled to compensatory and special damages as detailed herein as a result of Defendants' negligence.

141. L.S.'s damages are in excess of $75,000.00, exclusive of costs and interest.

142. Defendants School District and City acted with deliberate disregard of L.S.'s rights in their hiring, training and supervision of Mack Butler, Walter Howell, and Paul Blankinship that they were grossly negligent and punitive damages should be awarded against them.

143. Walter Howell is still employed as the principal of Stillwater High School.

### SIXTH CLAIM FOR RELIEF
Negligence
on behalf of Plaintiff L.S.
Against Defendants Mack and Jacque Butler

144. Plaintiff L.S. incorporates by reference all preceding paragraphs as if fully set forth below.

145. Upon information and belief, Mack and Jaque Butler were aware of Butler sexually assaulting L.S. and could have prevented it.

146. Upon information and belief, Jacque Butler overheard Butler sexually assaulting L.S. and negligently did not intervene.

147. Mack and Jacque Butler's negligence was the direct and proximate cause of L.S.'s injuries.

148. L.S. is entitled to compensatory and special damages as detailed herein as a result of Defendants' negligence.

149. L.S.'s damages are in excess of $75,000.00, exclusive of costs and interest.

### SEVENTH CLAIM FOR RELIEF
Battery
on behalf of Plaintiff L.S.
Against Defendant Jesse Butler

150. Plaintiff L.S. incorporates by reference all preceding paragraphs as if fully set forth below.

151. Defendant Jesse Butler, without the consent of Plaintiff L.S., acted with the intent to make harmful contact when he sexually assaulted L.S. and strangled her as described above.

152. L.S. is entitled to compensatory, special, and punitive damages as detailed herein as a result of Jesse Butler's battery.

153. L.S.'s damages are in excess of $75,000.00, exclusive of costs and interest.

### EIGHTH CLAIM FOR RELIEF
Assault
on behalf of Plaintiff L.S.
Against Defendant Jesse Butler

154. Plaintiff L.S. incorporates by reference all preceding paragraphs as if fully set forth below.

155. Defendant Jesse Butler acted with the intent of placing L.S. in apprehension of harmful contact when he stalked, intimidated, and harassed her on multiple occasions as described herein.

156. Plaintiff L.S. was placed in apprehension of immediate harmful contact as a result of Butler's conduct and suffered fright and terror.

157. L.S. is entitled to compensatory, special, and punitive damages as detailed herein as a result of Jesse Butler's assault.

158. L.S.'s damages are in excess of $75,000.00, exclusive of costs and interest.

### NINTH CLAIM FOR RELIEF
Negligence
on behalf of Plaintiff Amber and Tyler Selvey
Against all Defendants

159. Plaintiffs Amber and Tyler Selvey incorporate by reference all preceding paragraphs as if fully set forth below.

160. Plaintiffs Amber and Tyler Selvey are the parents of L.S. As such, Plaintiffs are entitled to the comfort, enjoyment, and society of their child.

161. As a direct and proximate result of the foregoing, Plaintiffs Amber and Tyler Selvey were deprived of the comfort, enjoyment, and society of L.S.

162. Plaintiffs Amber and Tyler Selvey are entitled to their consequential damages for L.S.'s medical expenses and the loss of L.S. services, as identified above.

**WHEREFORE**, Plaintiffs Amber Selvey, Tyler Selvey, and L.S. respectfully request an award of damages in excess of $75,000.00, punitive and exemplary damages, interest accrued and accruing, attorney fees and costs incurred, together with any other legal and equitable relief as is proper and just.

Respectfully submitted,

**MOORE-SHRIER LAW FIRM**

By: */s/Pansy Moore-Shrier*
Pansy Moore-Shrier, OBA No. 20289
Drew Mathews, OBA No. 34979
Cheyenne Donatello, OBA No. 35894
201 S. Denver Ave, Box-7
Suite 306
Tulsa, Oklahoma 74103
(918) 592-3001
(918) 794-7149 (*facsimile*)
*Attorneys for Plaintiffs*

**Attorney Lien Claimed**