## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

AMBER SELVEY, individually;　　　　　)
TYLER SELVEY, individually;　　　　　)
And on behalf of their minor child L.S.　)
　　　　　　　　　　　　　　　　　　)
　　　　Plaintiffs,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)　　Case No. 5:25-cv-01544-SLP
v.　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
INDEPENDENT SCHOOL DISTRICT　)
NUMBER 16 OF PAYNE COUNTY,　)
STATE OF OKLAHOMA, a/k/a　)
STILLWATER PUBLIC SCHOOL　)
DISTRICT, a/k/a STILLWATER　)
INDEPENDENT SCHOOL DISTRICT　)
NUMBER 16;　　　　　　　　　　　　)
CITY OF STILLWATER;　　　　　　　　)
JESSE BUTLER, an individual;　　　　　)
JACQUE BUTLER, an individual;　　　　)
MACK BUTLER, in his individual and　)
official capacity;　　　　　　　　　　　)
PAUL BLANKINSHIP, in his individual　)
and official capacity;　　　　　　　　　)
WALTER HOWELL, in his individual　)
and official capacity;　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　Defendants.　　　　　　　　　)

## MOTION TO DISMISS OF PAUL BLANKINSHIP
## AND BRIEF IN SUPPORT

**February 12, 2026**

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ............................................................................................ ii

**INTRODUCTION** .......................................................................................................... 1

**STANDARD OF REVIEW** ........................................................................................... 4

**LAW AND ARGUMENT** .............................................................................................. 5

    **I.**    **SRO Blankinship is immune from Plaintiff's claims under the GTCA** ...... 5

        **A. Under the Complaint's allegations, SRO Blankinship is immune from L.S.'s IIED claim under the GTCA** ............................................ 6

        **B. SRO Blankinship is immune from Parents' negligence claim under the GTCA** ............................................................................................... 7

    **II.**    **L.S. fails to state a plausible IIED claim upon which relief may be granted** .................................................................................................................. 8

    **III.**    **Parents fail to state a plausible negligence claim upon which relief may be granted** ............................................................................................... 13

    **IV.**    **L.S. is not entitled to punitive damages against SRO Blankinship** ............ 15

**CONCLUSION** .............................................................................................................. 16

**CERTIFICATE OF SERVICE** ..................................................................................... 17

i

# TABLE OF AUTHORITIES

**Cases**                                                                      **Page(s)**

*Ashcroft v. Iqbal*,
556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ..............................................4

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ..............................................................................................................4

*Boyett v. Airline Lumber Co.*,
277 P.2d 676, 1954 OK 321 ..............................................................................................14

*Breeden v. League Services Corp.*,
575 P.2d 1374....................................................................................................................9

*Brooks v. Mentor Worldwide LLC*,
985 F.3d 1272 (10th Cir. 2021)........................................................................................4

*Computer Publications, Inc. v. Welton*,
49 P.3d 732, 2002 OK 50 ..............................................................................................8, 9

*Cory v. Allstate Ins.*,
583 F.3d 1240 (10th Cir. 2009)........................................................................................4

*Escobar v. Mora*,
496 Fed. App'x. 806 (10th Cir. 2012)..............................................................................4

*Frey v. Town of Jackson, Wyoming*,
41 F.4th 1223 (10th Cir. 2022)....................................................................................4, 10

*Gabler v. Holder and Smith, Inc.*,
11 P.3d 1269, 2000 OK CIV APP 107.............................................................................12

*Graham v. Keuchel*,
847 P.2d 342 (Okla. 1993) ..............................................................................................15

*Indep. Sch. Dist. I-29 v. Crawford*,
688 P.2d 1291....................................................................................................................14

*Khalik v. United Air Lines*,
671 F.3d 1188 (10th Cir. 2012)........................................................................................5

*Kiefner v. Sullivan*,
13-CV-714-TCK-FHM, 2014 WL 2197812 (N.D. Okla. May 27, 2014)......................6

*Melton v. Oklahoma ex rel. Univ. of Oklahoma*,
532 F. Supp. 3d 1080 (W.D. Okla. 2021) ......................................................................6

*Mengert v. United States*,
120 F.4th 696 (10th Cir. 2024)........................................................................................9

*Mirzaie v. Smith Cogeneration, Inc.*,
962 P.2d 678, 1998 OK CIV APP 123.............................................................................12

*Myers v. Bhullar*,
609 F.Supp.3d 1232 (W.D. Okla. 2022) ........................................................................15

*Prickett v. Sashay Corp. Servs., LLC*,
Case No. 15-CV-190-TCK-FHM, 2015 WL 6759486....................................................12

ii

*Pebsworth v. Spirit AeroSystems, Inc.*
Case No. 16-CV-644-TCK-FHM, 2018 WL 156496 (N.D. Okla. March 30, 2018)........11
*Puckett v. Sprit Aerosystems, Inc.*,
Case No. 12-CV-578-JED-PJC, 2013 WL 1944889 (N.D. Okla. May 9, 2013) ...........11
*Ridings v. Maze*,
414 P.3d 835, 2018 OK 18 .............................................................................................15
*Shaw v. City of Oklahoma City*,
380 P.3d 894, 2016 OK CIV APP 55...............................................................................6
*Tuffy's, Inc. v. City of Okla. City*,
212 P.3d 1158 (Okla. 2009) .............................................................................................6

## Rules

Fed. R. Civ. P. 8...............................................................................................................4
Fed. R. Civ. P. 12(b)(6) ...................................................................................................1

## MOTION TO DISMISS OF PAUL BLANKINSHIP

Defendant, Paul Blankinship ("Defendant"; "SRO Blankinship"), sued in his individual and official capacity, hereby submits the following Motion to Dismiss the Complaint filed by Plaintiffs Amber and Tyler Selvey, individually ("Parents"), and on behalf of their minor child, L.S. ("L.S."), pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. In support hereof, SRO Blankinship submits the following brief:

## INTRODUCTION

The Complaint is, at its core, about Jesse Butler's criminal conduct and the failures Plaintiffs attribute to the school and others in responding to it—conduct that largely occurred off campus and outside the school's or its school resource officer's control.

As to Defendant Blankinship, a school resource officer employed by the Stillwater Police Department ("SPD") and assigned to Stillwater High School, the Complaint's theory narrows to criticism of his on-campus response, particularly two alleged potential protective order violations premised solely on Butler momentarily getting within close proximity to L.S. on campus. A school resource officer's job is demanding and reactive; he is responsible for many students, many duties, and many places at once. Plaintiffs understandably want security for their daughter, peace of mind, and answers. Even taking the Complaint's allegations as true, however, the law does not impose civil liability on an individual school resource officer for the tort of perceived imperfection; as pled, the allegations against SRO Blankinship concern discrete on-campus interactions and alleged failures to respond in the precise manner Plaintiffs wish would have occurred. But those

1

limited allegations do not plausibly support a claim for negligence against SRO Blankinship, and they certainly do not state a claim for intentional infliction of emotional distress.

Ultimately, the Complaint, in substance, criticizes SRO Blankinship for not unilaterally subjecting Butler to constant, all-day supervision tantamount to custodial confinement—preventing him from moving about the campus, coming into proximity with L.S., or even obtaining a line of sight to her—despite the practical and legal limits on a school resource officer's authority in a school where both involved students remained enrolled and present.

\*\*\*

Plaintiffs allege that, from January 2024 through March 2024, L.S. and Jesse Butler were in a dating relationship. (Doc. No. 1, ¶ 22). During that time, Butler committed a series of sexual assaults against L.S. (Doc. No. 1, ¶¶ 23-28). On September 12, 2024, L.S. reported Butler's conduct to Assistant Principal Tommie Grant. (Doc. No. 1, ¶ 32). SRO Blankinship was then called to the school's office to talk with L.S., where he informed her that she would likely be contacted by the Saville Center for Child Advocacy for the purpose of conducting forensic interviews. (Doc. No. 1, ¶ 34).

Plaintiffs allege that Butler then began a coordinated campaign of harassment against L.S. (Doc. No. 1, ¶ 38). On September 26, 2024, Amber Selvey filed for an Emergency Protective Order ("EPO") against Butler on behalf of L.S. (Doc. No. 1, ¶ 42). Sometime between the entry of the EPO and January 2025, Amber Selvey began to complain to the school about its handling of L.S.'s situation. (Doc. No. 1, ¶¶ 51-52). On

January 22, 2025, SRO Blankinship spoke with L.S. privately to discuss the situation, particularly Butler's conduct in continually parking near her or walking near her car in the school parking lot. (Doc. No. 1, ¶¶ 56-57). The Complaint inexplicably suggests that SRO Blankinship "deliberately" pulled L.S. out of class "to embarrass her." (Doc. No. 1, ¶ 59).[1]

Next, Plaintiffs allege that on January 28, 2025, SRO Blankinship attended a school wrestling match as part of his job duties as school resource officer, and that he "glared at and intimidated" L.S. during the match. (Doc. No. 1, ¶ 62). Plaintiffs allege that on January 29, 2025, the school district held a "safety plan meeting" regarding L.S., which SRO Blankinship did not attend, though he could overhear the meeting. (Doc. No. 1, ¶¶ 63-66). Curiously, Plaintiffs allege "upon information and belief" that SRO Blankinship, an employee of the Stillwater Police Department and not the school district, was "required to attend" L.S.'s safety meeting held by the school district. (Doc. No. 1, ¶ 69).[2]

Finally, Plaintiffs allege that on February 5, 2025, during a Senior Signing Day event on the school basketball court, "in full view of staff and administrators," Butler was momentarily within five feet of L.S., without any alleged contact or interaction beyond Plaintiffs' characterization of his demeanor. (Doc. No. 1, ¶¶ 76-78). According to the Complaint, "[n]ot one school employee intervened on L.S.'s behalf[.]" (Doc. No. 1, ¶ 79). Plaintiffs allege the "only action" taken by the school to support L.S. after this alleged EPO violation was to inform her that, if she were to advise the school ahead of time that she

---

[1] SRO Blankinship denies this allegation but, solely for the purposes of the instant Motion to Dismiss and pursuant to federal pleading standards, treats it as true.

[2] SRO Blankinship denies this allegation but, solely for the purposes of the instant Motion to Dismiss and pursuant to federal pleading standards, treats it as true.

wanted to attend an activity, the school would not permit Butler to attend that activity. (Doc. No. 1, ¶ 80). Butler has since been charged and sentenced for his crimes related to his sexual abuse and harassment of L.S. (Doc. No. 1 ¶¶ 85-86).

Based on the foregoing alone, Plaintiff L.S. alleges a single claim for Intentional Infliction of Emotional Distress against SRO Blankinship, (Doc. No. 1, ¶¶ 128-132), and Plaintiff Parents allege a single negligence claim against SRO Blankinship (Doc. No. 1, ¶¶ 159-162). These claims fail as a matter of law for the reasons described below.

## STANDARD OF REVIEW

The *Twombly/Iqbal* pleading standard is well-known by this Court. A complaint must present a facially plausible claim for relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The quality of these factual allegations must create more than speculation about the plaintiff's chances of recovery. *Id*. The United States Supreme Court has further held that, while the pleading standard of Fed. R. Civ. P. 8 does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). If the complaint contains only boilerplate labels and conclusory allegations, dismissal is proper because "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Escobar v. Mora*, 496 Fed. App'x. 806, 816 (10th Cir. 2012) (citing *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009)). "An allegation is conclusory if it states an inference without underlying facts or if it lacks any factual enhancement. Conclusory allegations are **not entitled to the assumption of truth.**" *Frey v. Town of Jackson, Wyoming*, 41 F.4th 1223, 1233 (10th Cir.

4

2022) (citing *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021))

(quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012)) (emphasis

added).

## LAW AND ARGUMENT

### I. SRO Blankinship is immune from Plaintiff's claims under the GTCA.

Plaintiffs' claims fall within the scope of the GTCA. 51 O.S. § 151 *et seq*. The

GTCA adopts the doctrine of sovereign immunity for the state, its political subdivisions,

**all their employees**, and waives that immunity in part, but only in the manner the GTCA

provides. 51 O.S. § 152.1(A). The GTCA provides that "[t]he state, its political

subdivisions, and all of their *employees* [...] *shall be immune from liability for torts*." 51

O.S. § 152.1 (emphasis added). To the extent liability is not waived, § 153 states:

> **The state or a political subdivision shall be liable for loss resulting from
> its torts or the torts of its employees acting within the scope of their
> employment** subject to the limitations and exceptions specified in this act
> and only where the state or political subdivision, if a private person or entity,
> would be liable for money damages under the laws of this state.

*See* 51 O.S. § 153(A) (emphasis added). With respect to employees acting within

the scope of their employment, Section 163 of the GTCA provides that, "[s]uits instituted

pursuant to the provisions of this act shall name as defendant the state or the political

subdivision against which liability is sought to be established. **In *no* instance shall an

employee** of the state or political subdivision **acting within the scope of his employment

be named as defendant [**...]." 51 O.S. § 163(C) (emphasis added). Though Plaintiffs

purport to sue SRO Blankinship in both capacities, any "official capacity" claim lies only

against the political subdivision under the GTCA; to the extent Plaintiffs intend "official

capacity" in the *Monell* sense, SRO Blankinship is not alleged to be a final policymaker.

"The OGTCA, which provides 'the exclusive remedy for an injured plaintiff to recover against a governmental entity in tort' under Oklahoma law, generally immunizes individual state employees from liability for torts committed 'within the scope of their employment.'" *Melton v. Oklahoma ex rel. Univ. of Oklahoma*, 532 F. Supp. 3d 1080, 1092 (W.D. Okla. 2021) (quoting *Tuffy's, Inc. v. City of Okla. City*, 212 P.3d 1158, 1163 (Okla. 2009)). "The OGTCA defines scope of employment as 'performance by an employee acting in good faith within the duties of the employee's office or employment or of tasks lawfully assigned by a competent authority [...] but shall not include corruption or fraud[.]'" *Kiefner v. Sullivan*, 13-CV-714-TCK-FHM, 2014 WL 2197812, at \*14 (N.D. Okla. May 27, 2014).

### A. Under the Complaint's allegations, SRO Blankinship is immune from L.S.'s IIED claim under the GTCA.

The Complaint plainly states: "Paul Blankinship [was] acting within the scope of [his] employment when [he] intentionally inflicted emotional distress on L.S." (Doc. No. 1, ¶ 134). The foregoing authorities, in conjunction with Plaintiffs' own allegation that SRO Blankinship was acting within the scope of his employment when he allegedly intentionally inflicted emotional distress on L.S., demonstrate that SRO Blankinship is immune from Plaintiffs' IIED claim as a matter of law.

As the Court has surely recognized, the allegation at the center of this discussion is curious, given that "IIED necessarily requires proof that an employee was acting in bad faith, in which case the employee's actions would be outside the scope of their

employment[.]" *Shaw v. City of Oklahoma City*, 380 P.3d 894, 897, 2016 OK CIV APP 55, ¶ 13. Accordingly, the Complaint pleads a legal impossibility, rather than a cognizable GTCA theory, and the IIED claim against SRO Blankinship must therefore be dismissed as a matter of law. However, even if the Complaint's inconsistent pleading was treated as a mistake, or L.S. was permitted to re-plead her IIED claim, the Complaint still fails to state a plausible IIED claim upon which relief may be granted, as shown below.

### B. SRO Blankinship is immune from Parents' negligence claim under the GTCA.

Parents' negligence claim fails because the Complaint contains no allegations that would take SRO Blankinship's conduct outside of the scope of his employment. All of the Complaint's allegations related to SRO Blankinship describe him acting in the course of either investigating the reported circumstances or carrying out his responsibilities as school resource officer. Whatever criticisms the Complaint levels at how he performed those responsibilities, the conduct described is still conduct undertaken as part of his official role—and therefore within the scope of his employment. Indeed, even the allegation that SRO Blankinship "glared at and intimidated" L.S. is expressly framed as occurring while he was acting in the scope of his employment. (See Doc. No. 1, ¶ 134).

Further, the allegation that, "[u]pon information and belief, SRO Blankinship was required to attend L.S.'s safety meeting as part of his duties as a school resource officer, but he did not attend the meeting[,]" (Doc. No. 1, ¶ 69), does not plausibly establish conduct outside the scope of employment either. As a school resource officer, SRO Blankinship is a Stillwater Police Department officer assigned to the campus; his duties and reporting

7

structure are defined by the Police Department, not by the school district, and the Complaint characterizes the "safety meeting" as a school-district convened meeting. (Doc. No. 1, ¶ 63). On these pled facts, Plaintiffs cannot transform an alleged failure to attend a school district meeting into an allegation that SRO Blankinship stepped outside the scope of his SPD employment. If anything, a decision not to attend a non-SPD meeting most naturally suggests that he was engaged in other assigned law enforcement/SRO tasks at the time—conduct that remains within the scope of his employment.

In short, the Complaint pleads, at most, that SRO Blankinship performed (or allegedly failed to perform) aspects of his assigned SRO role in a manner Plaintiffs criticize. Oklahoma law does not treat such alleged negligent performance of job duties (without well-pleaded facts showing malice, bad faith, or other out-of-scope conduct) as conduct outside the scope of employment. Because the Complaint contains no plausible allegations taking SRO Blankinship outside the scope of his employment, he is entitled to immunity under the GTCA and the negligence claim against him must be dismissed.

## II. L.S. fails to state a plausible IIED claim upon which relief may be granted.

Even if the Complaint's inconsistent pleading was treated as a mistake, or L.S. was permitted to re-plead her IIED claim, the Complaint still fails to state a plausible IIED claim upon which relief may be granted. To plead an IIED claim upon which relief may be granted, Plaintiffs must plausibly allege: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe. *Computer Publications, Inc. v. Welton*, 49 P.3d 732, 735, 2002 OK 50 ¶ 7.

8

Here, Plaintiffs' pleading as to the intent element is internally inconsistent. On the one hand, the Complaint labels SRO Blankinship's conduct "intentional," (Doc. No. 1, ¶ 134); on the other, the Complaint alleges he was acting within the scope of his employment when he supposedly committed IIED—an allegation that is difficult to reconcile with the bad-faith nature of an IIED claim. Even assuming arguendo that Plaintiffs' intent allegations are sufficient at the pleading stage notwithstanding that inconsistency, the claim still fails because the Complaint does not plausibly allege conduct that is "extreme and outrageous." Moreover, under the facts alleged, Plaintiffs' claimed emotional distress is not plausibly traceable to SRO Blankinship.

"The court, in the first instance, must determine whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery or whether it is necessarily so." *Id.* at 735. This element "requires proof that the defendant's conduct was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and that such conduct is regarded as atrocious and utterly intolerable in a civilized community." *Id.*

Further, an IIED claim "requires proof that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it." *Id.* at 736 (quoting *Breeden v. League Services Corp.*, 575 P.2d 1374, 1377-78 n.6). "[F]actors for determining whether emotional distress is sufficiently severe include: whether the plaintiff experienced physical symptoms as a result of the distress; whether the plaintiff sought medical attention for either physical symptoms or the emotional distress itself; and whether

the distress caused a disruption to the plaintiff's daily affairs." *Mengert v. United States*, 120 F.4th 696, 713 (10th Cir. 2024).

As applied here, nowhere does the Complaint plead facts that, if true, would permit a reasonable inference of "extreme and outrageous" conduct. Instead, Plaintiff's IIED theory appears to rest on two wholly conclusory allegations that SRO Blankinship: (1) pulled L.S. out of class for a private meeting "to embarrass her[,]" (Doc. No. 1, ¶ 59); and (2) "glared at and intimidated" L.S. during a school wrestling match that SRO Blankinship attended as part of his job duties (Doc No. 1, ¶¶ 60-62).

However, the Complaint contains no allegations whatsoever to support that SRO Blankinship pulled L.S. out of class "to embarrass her," nor that his presence at a school event in connection with his SRO duties—where part of his role is to observe students and monitor safety—somehow amounted to a menacing "glare" or "intimidation" as Plaintiffs label it. As relayed above, "[a]n allegation is conclusory if it states an inference without underlying facts or if it lacks any factual enhancement. Conclusory allegations are **not entitled to the assumption of truth.**" *Frey*, 41 F.4th at 1233. SRO Blankinship's decision to speak with L.S. in private is plainly consistent with his investigation of the underlying circumstances and performance of his protective duties as the school resource officer. Plaintiffs' characterization of that meeting as an effort "to embarrass" L.S. and, by extension, as intentional infliction of emotional distress, is unsupported by any factual allegations and amounts to little more than a label; indeed, this characterization sits uneasily alongside Plaintiffs' broader critique that SRO Blankinship failed to take sufficient action to investigate and protect L.S. Likewise, stripped of its conclusory gloss,

the "glared at and intimidated" allegation reduces to an assertion that SRO Blankinship attended a school event in the course of his duties and looked in L.S.'s direction.

To the extent that Plaintiff's IIED claim is based on SRO Blankinship's alleged failure to intervene at the Senior Signing Day event when Butler "came within five feet of L.S.[,]" (Doc. No. 1, ¶¶ 77-79), this, too, fails to show extreme and outrageous conduct. As Plaintiff alleges, "[n]ot one school employee intervened on L.S.'s behalf" during this brief moment of proximity between two students at a school event. As pled, this allegation does not plausibly suggest that SRO Blankinship engaged in conduct "so extreme in degree as to go beyond all possible bounds of decency." Nor can Plaintiff plausibly impose IIED liability by faulting a school resource officer for failing to detect and prevent every fleeting change in proximity at a crowded school function, or for not maintaining constant, exclusive attention on a single student at all times.

Oklahoma courts routinely dismiss IIED claims with more severe conduct allegations than what is alleged for SRO Blankinship—a private meeting, a perceived glare, and an alleged failure to prevent brief moments of proximity. *See Pebsworth v. Spirit AeroSystems, Inc.*, Case No. 16-CV-644-TCK-FHM, 2018 WL 156496 (N.D. Okla. March 30, 2018) (dismissing IIED claim for lack of extreme and outrageous conduct despite allegations that defendant employer failed to complete injury reporting regarding the plaintiff's injury, prohibited the plaintiff from leaving work to seek medical attention, subjected the plaintiff to an unauthorized and unnecessary frisk for weapons, and terminated him on a pretext); *see also Puckett v. Sprit Aerosystems, Inc.*, Case No. 12-CV-578-JED-PJC, 2013 WL 1944889 (N.D. Okla. May 9, 2013) (dismissing IIED claim

11

against defendant employer for lack of extreme and outrageous conduct despite allegations that the plaintiff was routinely called "stupid" and was harassed throughout her employment); *Prickett v. Sashay Corp. Servs., LLC*, Case No. 15-CV-190-TCK-FHM, 2015 WL 6759486 (dismissing IIED claim against defendant employer for lack of extreme and outrageous conduct despite allegations that the plaintiff was subjected to humiliation, insults, and mocking with regard to her physical therapy and efforts to take care of her terminally ill father); *see also Mirzaie v. Smith Cogeneration, Inc.,* 962 P.2d 678, 684, 1998 OK CIV APP 123 (employer's conduct was not extreme and outrageous when, *inter alia,* the plaintiff's manager made derogatory sexual remarks about the plaintiff, woke plaintiff up in the middle of the night to do unnecessary work, and terminated him two hours before his wedding); *see also Gabler v. Holder and Smith, Inc.*, 11 P.3d 1269, 1280, 2000 OK CIV APP 107, ¶¶ 61-65 (affirming dismissal of IIED claim where the plaintiff alleged to be subjected to verbal and mental abuse on an ongoing basis, including shouting of profanities and vulgarities at plaintiff).

The Complaint also fails to plead facts plausibly satisfying the causation and severity components of IIED as to SRO Blankinship. The Complaint attributes L.S.'s alleged psychological injury, treatment, and ongoing distress to Butler's sexual assaults and the ensuing harassment and fear those events created. By contrast, the allegations directed at SRO Blankinship concern, at most, brief, non-contact episodes of proximity and Plaintiffs' dissatisfaction with how school personnel responded to those circumstances. The Complaint does not plausibly allege that any act or omission by SRO Blankinship, separate and apart from Butler's misconduct, caused L.S. to suffer severe emotional

12

distress, or that any incremental distress allegedly associated with a fleeting proximity event is the type of distress "so severe that no reasonable person could be expected to endure it." Effectively, the Complaint does not plead a non-speculative causal bridge from SRO Blankinship's alleged and perceived imperfect response to possible EPO violations to the sever emotional distress and treatment damages Plaintiffs seek to recover. Absent non-conclusory facts showing that SRO Blankinship's conduct itself was a substantial factor in producing severe emotional distress (as opposed to distress attributable to Butler's misconduct and its aftermath), the IIED claim fails as a matter of law.

### III. Parents fail to state a plausible negligence claim upon which relief may be granted.

As the Court is no doubt aware, to state a negligence claim upon which relief may be granted, Plaintiffs must plead facts supporting the existence of a duty owed by SRO Blankinship to *these Plaintiffs*, a breach, causation, and damages. Here, the negligence claim against SRO Blankinship is asserted only by Parents, not L.S.; Parents' alleged damages are: (1) deprivation of the "comfort, enjoyment, and society" of their child, and (2) "consequential damages" consisting of L.S.'s medical expenses and loss of her services. (Doc. No. 1, ¶¶ 160-162). In substance, Parents' theory seeks to recover for their own emotional harm arising from what they learned happened to their child, rather than any independent, legally cognizable injury to them caused by SRO Blankinship. Oklahoma does not permit parents to obtain such emotional damages in this indirect, derivative manner by styling them as a negligence claim against a third party, absent a recognized direct-victim theory.

To the extent that Parents seek consequential expenses (medical expenses/loss of services), Oklahoma law treats those items as derivative of an underlying tort injury to the child; they are not a standalone "failure-to-protect" duty running directly to the parents. *Indep. Sch. Dist. I-29 v. Crawford*, 688 P.2d 1291, 12934-94, 1984 OK 62, ¶ 9; *see also Boyett v. Airline Lumber Co.*, 277 P.2d 676, 1954 OK 321, ¶0(1). Accordingly, Parents may recover those consequential items, if at all, only upon a plausible showing that SRO Blankinship breached a duty owed in connection with L.S.'s safety and that his conduct actually and proximately caused an actionable injury to L.S. Further, even if the Court were to assume, arguendo, that Parents can pursue some form of negligence theory here, they still must plausibly plead facts showing breach and causation as to SRO Blankinship.

Parents do not plausibly plead that here. The Complaint's theory is that Jesse Butler committed sexual assaults and thereafter continued to create a risk of contact with L.S. By contrast, the allegations directed at SRO Blankinship, at most, amount to conclusory and attenuated assertions that he failed to ensure complete separation between two students at all times—e.g., an alleged failure to prevent a brief moment of proximity between Butler and L.S. at a school event, or an alleged failure to prevent Butler from walking near L.S.'s car in the school parking lot. Those allegations do not plausibly establish a breach of any cognizable duty by the school resource officer, nor do they plead a non-speculative causal link between any act or omission by SRO Blankinship and the consequential damages Parents seek. Put differently, the damages Parents identify flow, *at most*, from Butler's criminal conduct and the broader circumstances surrounding the assaults, rather than from any specific, actionable negligence by SRO Blankinship. As pled, the causal chain is too

attenuated to convert these allegations into negligence liability against him, particularly where the alleged failures concern momentary proximity events that occurred after the underlying assaults and are not plausibly alleged to have caused a distinct, actionable injury attributable to SRO Blankinship.

Moreover, Parents cannot repackage their own emotional distress as "loss of the comfort, enjoyment, and society" of their child to create a viable negligence damages theory. Oklahoma negligence law does not permit parents to recover their own emotional-harm damages merely because their child was injured, absent a recognized direct-victim theory. *Ridings v. Maze*, 414 P.3d 835, 837-39, 2018 OK 18, ¶¶ 6-12. For these reasons, the negligence claim should be dismissed to the extent it seeks "comfort, enjoyment, and society" damages. Because Parents' remaining claimed "consequential" items are derivative, the negligence claim must also be dismissed absent plausible allegations of breach and causation tying those expenses to actionable negligence by SRO Blankinship, as opposed to Butler's misconduct and its aftermath.

### IV. L.S. is not entitled to punitive damages against SRO Blankinship.

To the extent that L.S. seeks punitive damages against SRO Blankinship in connection with her IIED claim, that request should be dismissed (or, at minimum, stricken) because the Complaint alleges no facts that could support such an extraordinary remedy. The Oklahoma Supreme has explained that "punitive damages are allowable where there is evidence of reckless and wanton disregard of another's rights **from which malice and evil intent may be inferred**." *Myers v. Bhullar*, 609 F.Supp.3d 1232, 1238

15

(W.D. Okla. 2022) (quoting *Graham v. Keuchel*, 847 P.2d 342, 363-64 (Okla. 1993) (emphasis added).

For the same reasons that the Complaint fails to plausibly allege conduct that is "extreme and outrageous," the Complaint fails to plausibly allege that SRO Blankinship was in any way motivated by "malice and evil intent." Accordingly, this request should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendant Paul Blankinship respectfully requests that the Court dismiss Plaintiffs' claims against him pursuant to Rule 12(b)(6) and the GTCA, with prejudice, and award further relief as the Court deems proper.

Respectfully submitted,

 s/ W. Riley Nester
Robert S. Lafferrandre, OBA No. 11897
Jessica L. Dark, OBA No. 31236
W. Riley Nester, OBA No. 36222
PIERCE COUCH HENDRICKSON
 BAYSINGER & GREEN, LLP
P.O. Box 26350
Oklahoma City, OK  73126
(405) 235-1611      Telephone
(405) 235-2904      Facsimile
rlafferrandre@piercecouch.com
jdark@piercecouch.com
rnester@piercecouch.com
***Attorneys for Defendant***
***Paul Blankinship***

## <u>CERTIFICATE OF SERVICE</u>

  I certify that on the 12th day of February, 2026, I electronically transmitted the foregoing document to the Clerk of Court using the ECF system for filing and the transmittal of a Notice of Electronic Filing to all counsel who have entered an appearance in this action.

         s/ W. Riley Nester
        W. Riley Nester