### IN THE UNITED STATES DISTRICT COURT FOR THE
### WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| AMBER SELVEY, individually; )<br>TYLER SELVEY, individually; )<br>And on behalf of their minor child L.S. )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>INDEPENDENT SCHOOL DISTRICT )<br>NUMBER 16 OF PAYNE COUNTY, )<br>STATE OF OKLAHOMA, a/k/a )<br>STILLWATER PUBLIC SCHOOL )<br>DISTRICT, a/k/a STILLWATER )<br>INDEPENDENT SCHOOL DISTRICT )<br>NUMBER 16, et al., )<br>)<br>Defendants. ) | Case No. 5:25-cv-01544-SLP |

### REPLY IN SUPPORT OF
### DEFENDANT BLANKINSHIP'S MOTION TO DISMISS

Defendant, Paul Blankinship ("SRO Blankinship"), hereby respectfully submits his Reply in support of his Motion to Dismiss (Doc. No. 18). Dismissal remains warranted pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. SRO Blankinship offers the following brief in support:

### INTRODUCTION

Plaintiff's Response largely confirms the defects identified in SRO Blankinship's Motion to Dismiss. In the same breath that Plaintiffs criticize SRO Blankinship for purportedly not doing enough on campus, they continue to villainize the very actions he did take in carrying out his duties as school resource officer, turning a private meeting into an effort "to embarrass," routine observation at a school event into "harassment," and an

alleged inability to prevent every moment of proximity between two enrolled students into actionable tortious conduct. Rather than plausible pleading, this Response reflects rhetorical gloss layered onto conclusory allegations. *See Frey v. Town of Jackson, Wyoming*, 41 F.4th 1223, 1233 (10th Cir. 2022).

The Response also repeatedly overstates what the Complaint actually alleges. In its "Relevant Facts of the Case" section, Plaintiffs assert, for example, that Blankinship "did not investigate L.S.'s allegations and did not take any action to protect her," citing paragraphs 35 and 36 of the Complaint, despite the fact that those paragraphs refer to the "Defendant School District," not Blankinship. (Doc. No. 28, page 2); (Doc. No. 1, ¶¶ 35-36). Likewise, the Response adds new embellishment to the allegation that SRO Blankinship met with L.S. "to embarrass her" by now asserting that he made it appear she "was in trouble," even though the Complaint alleges no facts supporting that characterization. (Doc. No. 28, page 2). That same improper gloss continues throughout the Response, including characterizing this escort as a "perp walk." (Doc. No. 28, page 10). Perhaps the most egregious re-framing is Plaintiffs' assertion that SRO Blankinship "explicitly stated that he would not protect [L.S.] from [Butler]," (Doc. No. 28, page 9), citing paragraph 58 of the Complaint. However, paragraph 58 alleges only that "SRO Blankinship informed L.S. that as long as Butler did not speak to her, SRO Blankinship would not do anything about Butler's conduct." At most, this is an allegation that SRO Blankinship conveyed his understanding of when Butler's conduct would warrant his intervention. Plaintiffs' attempt to transform that alleged statement into an outright refusal to protect L.S. is not a fair reading of the Complaint.

More fundamentally, Plaintiffs' theory appears to fault SRO Blankinship for not independently imposing constant and individualized control over Butler, a student the relevant school authorities had already permitted to remain on campus, and for not taking unilateral punitive or protective measures beyond the practical and legal bounds of his role as school resource officer. The law does not convert that sort of criticism into "extreme and outrageous" conduct. In effect, Plaintiffs' Response is pure advocacy, rather than an application of well-pleaded facts. This Reply is therefore necessary to correct both the Response's misstatements of law and its repeated attempts to re-write the Complaint to manufacture a plausible claim where none was pleaded.

## **LAW AND ARGUMENT**

**I.     SRO BLANKINSHIP REMAINS IMMUNE FROM PLAINTIFFS' CLAIMS UNDER THE GTCA.**

### **A.  L.S.'s IIED claim remains barred by the GTCA.**

Plaintiffs' principal GTCA response rests on a misunderstanding of SRO Blankinship's argument and a misapplication of Oklahoma law. SRO Blankinship's point was simple – the Complaint itself pleads that Blankinship was acting within the scope of his employment when he intentionally inflicted emotional distress on L.S. (Doc. No. 1, ¶ 134). Having pleaded in-scope conduct, Plaintiffs cannot now avoid dismissal by arguing in the abstract that a complaint may survive where it alleges facts showing an employee acted outside the scope of employment in bad faith. Stated differently, Plaintiffs' argument appears to rest on the mistaken premise that SRO Blankinship could have acted both within the scope of his employment and in bad faith, even though Oklahoma law treats bad faith

conduct as outside the scope of employment for GTCA purposes. 51 O.S. § 152(13).

*Snow v. Norman Pub. Schs.*, Case No. CIV-09-530, 2009 WL 1752696 (W.D. Okla. June 19, 2009), does not help Plaintiffs. As *Snow* recognized, intentional tort claims against individual government employees may proceed only where the petition alleges conduct egregious enough to fall outside the scope of employment; by contrast, any tort claim asserted against the employees based on conduct within the scope of employment had to be dismissed. *Id.* at *2-3. That is precisely the distinction SRO Blankinship made in his Motion to Dismiss, and it is precisely why dismissal is warranted here.

Despite asserting that "courts have allowed IIED claims to proceed against government employers ***and individual employees*** when the outrageous conduct occurred during the performance of an employee's duties[,]" (Doc. No. 28, page 5) (emphasis added), Plaintiffs did not identify any such case. In *Elizabeth S.*, the court's IIED discussion concerned whether the *school district* could face liability under the GTCA; it did not hold that an individual employee remained personally liable notwithstanding GTCA immunity. *Elizabeth S. v. Okla. City Pub. Schs.*, Case No. CIV-08-105, 2008 WL 4147572, at *1, *3-4 (W.D. Okla. Sept. 3, 2008). In *Fitzer*, meanwhile, the court allowed an IIED claim to proceed against individual school employees, but it did so without analyzing scope of employment in the IIED context, and without confronting an allegation that the employees acted within the scope of their employment when intentionally inflicting emotional distress. *Fitzer*, Case No. CIV-15-552, 2015 WL 6160370, at *3-4 (W.D. Okla. Oct. 20, 2015). Thus, neither case addresses, much less resolves in Plaintiffs' favor, the issue presented here.

Plaintiffs' fallback observation that scope-of-employment questions are sometimes for the trier of fact is both curious and beside the point. SRO Blankinship has not disputed that he was acting within the scope of his employment at the times relevant to Plaintiffs' allegations, and Plaintiffs pleaded that very fact. Under Oklahoma law, "IIED necessarily requires proof that an employee was acting in bad faith, in which case the employee's actions would be outside the scope of their employment[.]" *Shaw v. City of Oklahoma City,* 380 P.3d 894, 897, 2016 OK CIV APP 55, ¶ 13. The Response does not cure the legal impossibility pleaded by the Complaint.

### B. Parents' negligence claim remains barred by the GTCA.

The Response makes no effort to address SRO Blankinship's negligence-immunity argument. Parents' negligence theory still rests entirely on allegations that Blankinship, while serving as school resource officer, inadequately investigated or responded to on-campus circumstances. These allegations are criticisms of how SRO Blankinship allegedly performed his job duties, not allegations that he abandoned them or acted outside them.

Plaintiffs instead recast those same allegations throughout the Response in more inflammatory language. However, labels alone do not move conduct outside the scope of employment. Plaintiffs still allege, at most, that SRO Blankinship spoke with L.S. about the situation, attended a wrestling match in connection with his duties, allegedly did not attend a school-convened safety meeting, and allegedly failed to intervene during a brief moment of proximity at a Senior Signing Day event. None of these allegations plausibly allege conduct outside the scope of SRO Blankinship's employment. The Response's repeated suggestion that SRO Blankinship "shielded" Butler or "refused to protect" L.S.

5

simply layers conclusions atop those same facts.

Accordingly, for the reasons already set for in his Motion to Dismiss, SRO Blankinship remains immune from Parents' negligence claim under the GTCA as he was acting in the scope of his employment at all relevant times, and the Response provides no basis to conclude otherwise.

## II.    L.S. still fails to state a plausible IIED claim.

Even if the Complaint had not affirmatively pleaded that SRO Blankinship was acting within the scope of his employment, Plaintiff's Response does not supply the missing factual allegations necessary to state an IIED claim; it mostly repeats the same conclusory labels while adding new rhetoric not found in the Complaint. That is especially clear in Plaintiffs' description of the September 2024 interaction; the Response says that SRO Blankinship "discouraged L.S. and another victim from reporting the sexual assault," (Doc. No. 28, page 6), but the cited allegations state only that he interviewed L.S. and told her she would need to "get her story straight with Butler's other victim" and go to the Saville Center for Child Advocacy. (Doc. No. 1, ¶ 34). Though SRO Blankinship denies the veracity of this allegation, even accepting it as true for 12(b)(6) purposes, it does not plausibly amount to "discouraging" the reporting of sexual assault; if anything, it describes directing L.S. toward the correct resources for further forensic investigation.

The same problem appears with the January 22 meeting in which SRO Blankinship discussed the situation with L.S. in his office. The Response adds that Blankinship made it appear L.S. "was in trouble" and later calls the interaction a "perp walk" (Doc. No. 28, pages 6, 10), despite the Complaint containing no factual allegations supporting those

6

characterizations. Plaintiffs have pleaded only the conclusion that he pulled L.S. out of class "to embarrass her." As Defendant explained in the Motion, "[a]n allegation is conclusory if it states an inference without underlying facts or if it lacks any factual enhancement. Conclusory allegations are not entitled to the assumption of truth." *Frey*, 41 F.4th at 1233. The Response's added gloss, rather than factual allegations which would support the existence of the alleged motive "to embarrass," or even support an inference of the same, only further highlights the lack of factual support.

Plaintiffs' cited school cases do not render the conduct alleged here "extreme and outrageous." These cases generally describe what is necessary for an IIED claim *against a school*, rather than an individual employee of the school, to move forward (the one exception being the *McLaughlin* case, in which it was not alleged the defendant individuals were acting within the scope of their employment when committing an IIED). The Response's cited school cases involve materially different conduct allegations, such as actual personal participation in severe harassment, lewd comments to minors, or institutional cover-up and multi-year failure to address widespread sexual misconduct. Moreover, none of these cases involve an IIED claim moving forward against an individual employee alleged to have been acting in the scope of their employment at the relevant time. In *Fitzer*, for example, the court relied on allegations that school officials refused to report or investigate specific, severe incidents of harassment and malicious behavior, including sexually degrading and personally demeaning attacks, and that one defendant participated in that harassment. *Fitzer*, 2015 WL 6160370, at *1, 3-4. In *Doe v. Oologah-Talala*, the alleged conduct involved a teacher's lewd comments to and inappropriate touching of

7

minor students, obviously quite a bit more objectionable than a conclusory "glare" or a challenged investigative response. *Doe v. Oologah-Talala Indep. Sch. Dist. No. 4 of Rogers Cnty.*, Case No. CIV-21-240, 2024 WL 1354537 (N.D. Okla. Mar. 29, 2024). The *Mount Saint Mary High School* case involved allegations that the school, through its staff, engaged in a multi-year effort to cover up rampant sexual assault, blame reporting girls, and mislead them about relevant facts. *Doe 1 v. Mount Saint Mary's High Sch. Corp. of the State of Oklahoma*, Case No. CIV-22-992, 2025 WL 490011 (W.D. Okla. Feb. 13, 2025).

Here, the conduct actually alleged against SRO Blankinship pales in comparison to the conduct above and in other cases in which Oklahoma district courts found extreme and outrageous conduct. As this Court recently reiterated in *Mount Saint Mary's*, Plaintiff must allege sufficient facts plausibly demonstrating conduct "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and that such conduct is regarded as atrocious and utterly intolerable in a civilized community." *Id.* at *7. "This is a difficult standard to meet and conduct that amounts to no more than mere insults, indignities, or petty oppressions will not suffice." *Id.* (citing *Daemi v. Church's Fried Chicken, Inc.*, 931 F.2d 1379, 1388 (10th Cir. 1981)). Further, Plaintiffs' attempt to distinguish SRO Blankinship's cited cases because they arose in employment setting misses the point. Defendant cited those authorities not because the factual settings are identical, but because they illustrate the level of misconduct Oklahoma courts have held insufficient as a matter of law. Oklahoma courts reserve IIED for truly outrageous conduct, and the conduct alleged here does not qualify.

**Plaintiffs also effectively concede the causation problem.** Rather than identifying

8

what conduct by SRO Blankinship caused severe distress, Plaintiffs argue they need not "apportion or categorize separate injuries[.]" (Doc. No. 28, page 11). However, SRO Blankinship's argument is not that Plaintiffs must provided a damages spreadsheet at the pleading stage; it is that the Complaint must still plead facts permitting a plausible inference that *Blankinship's* conduct caused severe emotional distress. *Computer Publications, Inc. v. Welton,* 49 P.3d 732, 2002 OK 50, requires causation and severity, and *Mengert v. United States*, 120 F.4th 696 (10th Cir. 2024), identifies factors relevant to severity, including physical symptoms, treatment, and disruption of daily affairs. The Response offers only generalized allegations of counseling, educational interference, and distress—all of which the Complaint attributes, in substance, to Butler's sexual assaults. Plaintiffs cannot simply name SRO Blankinship as an additional defendant and rely on undifferentiated global damages allegations untethered to his conduct. The causal bridge remains missing. *See also Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) ("[i]t is particularly important . . . that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him[.]"). Accordingly, for all reasons set out in the Motion to Dismiss and maintained here, L.S.'s IIED claim should be dismissed.

### III.     Parents still fail to state a plausible negligence claim.

Plaintiffs' Response largely confirms SRO Blankinship's point. It reframes Parents' negligence claim not as a direct negligence theory against Blankinship, but as a derivative claim for consequential damages arising from L.S.'s injuries. That is exactly why dismissal remains appropriate as to any independent emotional-distress-type theory Parents try to

9

assert, and it also confirms that Parents can recover derivative items, if at all, only to the extent Blankinship is plausibly liable to L.S. in the first place.

That prerequisite is not satisfied. As explained in the Motion, the alleged damages flow from Butler's criminal conduct and the surrounding trauma, not from any non-speculative act or omission of Blankinship. Parents' Response does not grapple with that causation problem. Instead, it cites derivative-damages law generally and then says, almost in passing, that "[t]o the extent that Blankinship is liable to L.S., he is liable" to the parents for consequential damages. That is true enough in the abstract, but it does nothing to answer Defendant's actual argument that the Complaint does not plausibly allege Blankinship's liability to L.S. in the first place. Plaintiffs' damages theory is not meaningfully tied to any actionable negligence by SRO Blankinship, and dismissal of these alleged damages against Blankinship is therefore maintained.

## IV. SRO Blankinship maintains that L.S. is not entitled to punitive damages against him.

SRO Blankinship maintains that, for the same reasons that Plaintiffs fail to allege facts showing "extreme and outrageous" conduct, they likewise fail to allege facts suggesting a "reckless and wanton disregard for another's rights from which malice and evil intent may be inferred."

WHEREFORE, Defendant Paul Blankinship respectfully requests this Court dismiss all claims against him in the Plaintiffs' Complaint as it fails to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6) and Oklahoma law.

Respectfully submitted,

 s/ W. Riley Nester
Robert S. Lafferrandre, OBA No.
Jessica L. Dark, OBA No.
W. Riley Nester, OBA No.
PIERCE COUCH HENDRICKSON
 BAYSINGER & GREEN, LLP
P.O. Box 26350
Oklahoma City, OK  73126
(405) 235-1611	Telephone
(405) 235-2904	Facsimile
rlafferrandre@piercecouch.com
jdark@piercecouch.com
rnester@piercecouch.com

***Attorneys for Defendant Paul Blankinship***

## CERTIFICATE OF SERVICE

I certify that on the 16th day of March, 2026, I electronically transmitted the foregoing document to the Clerk of Court using the ECF system for filing and the transmittal of a Notice of Electronic Filing to all counsel who have entered an appearance in this action.

*Attorney for Plaintiff*

 s/ W. Riley Nester